UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSHUA M. KOONCE,

              Plaintiff,              Case No. 1:16-cv-550

v.                                             Honorable Janet T. Neff

ANDREW JOHNSON, et al,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Joshua M. Koonce presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF). He sues MDOC Grievance Manager Richard Russell and the following DRF employees: Facility Manager Andrew Johnson; Administrative Assistant J. Koenigsknecht; and Warden S. Campbell.

Plaintiff alleges that, on July 17, 2015, an officer broke his prescription glasses during a cell search. The officer offered to help Plaintiff get reimbursed for the loss from the Prisoner Benefit Fund (PBF). The PBF granted his claim of $237.04. However, when the money was placed in Plaintiff's prisoner trust account, it was taken to pay court-ordered costs and victim restitution. Plaintiff contends that he was misled by Defendant Facility Manager Andrew Johnson, who advised him that the money he recovered from the PBF would not be taken, because money for medical expenses was left alone.

Plaintiff filed a grievance, asserting that the funds should not have been taken because the money was designated to pay for the replacement of his glasses. Defendant Johnson interviewed Plaintiff and denied the grievance at Step I, and the grievance denial was approved by Defendant Koenigsknecht. Defendants Campbell and Russell denied Plaintiff's Step-II and Step-III grievances, respectively.

Plaintiff asserts that Defendants misapplied MICH. DEP'T OF CORR. - Policy Directive 04.02.105 ¶¶ V and W. Under ¶ V,

> V. Funds shall be removed from a prisoner's trust account under the following priority, unless otherwise specifically ordered by a court:
>
> 1. To make an administrative correction to the account (e.g., to remove funds credited to wrong account or in wrong amount; to reverse a credit for a check or money order found to be uncollectible).

    2.    Payment of victim restitution as set forth in PD 04.02.107 "Collection of Victim Restitution/Court Ordered Payments[."]

    3.    Payment of child support ordered by a court. Funds shall be removed only if the court orders the Department to remove the funds using State Court Administrative Office (SCAO) approved form FOC 112 unless otherwise directed by the Administrator of the Office of Legal Affairs or designee. If an "Order of Income Withholding" is received directing the Department to remove funds, it shall be returned requesting that the appropriate order be provided instead. If there is more than one order of support, the funds shall be divided equally between or among the required payments.

    4.    Payment of fees or costs pursuant to a court order directing the Department to remove the funds or pursuant to PD 04.02.107 "Collection of Victim Restitution/Court-Ordered Payments[,"] or the Prison Reimbursement Act. The Administrator of the Office of Legal Affairs or designee shall be notified if a court order for collection of criminal fees or costs is received that is not based on SCAO approved form MC 288, unless otherwise directed by the Administrator or designee. If there is more than one court order for payment of filing fees and costs, payments shall be applied in chronological order based on the date the court order was received in the appropriate business office.

    5.    Payment of fees for medical services assessed pursuant to PD 03.04.101 "Prisoner Health Care Copayment," in chronological order.

    6.    Payment of all other institutional debts, including debts to the PBF, in chronological order.

Under ¶ W,

    W.    All new funds received by a prisoner shall be used to satisfy his/her debts as outlined in this policy except under the following circumstances or as otherwise specifically ordered by a court:

    1.    It would leave the prisoner with less than $10 available during the month for personal use, based on the prisoner's monthly beginning spendable balance plus new funds received during the month. This includes if funds are being removed pursuant to a court order, unless the order specifically requires otherwise.

2. The funds were loaned or advanced to the prisoner by the Department (e.g., parole loan).

3. The funds are proceeds from savings bonds cashed by the prisoner through the institution provided the proceeds are received directly from the processing bank (e.g., Federal Reserve Bank of Chicago - Lower Peninsula; Federal Reserve Bank of Minneapolis - Upper Peninsula).

4. The funds were sent specifically for "release planning" or for payment of medical or education expenses. Funds designated for medical or education expenses, however, shall first be used to satisfy any medical or education debts, as applicable; a signed disbursement is not required in such cases. Designated funds shall be used only for the purpose for which they were designated after first satisfying any court-ordered payments (e.g., filing fees and/or costs, victim restitution, the Prison Reimbursement Act). Unused designated funds may be returned by the prisoner only to the source of the funds.

5. A total of 50% of funds received in excess of $50 per month shall be removed for payment of restitution as set forth in PD 04.02.107 "Collection of Victim Restitution/Court-Ordered Payments"; this is the maximum to be collected each month for payment of restitution even if multiple restitution orders are received.

6. 50% of funds received in excess of $50 per month shall be removed for payment of criminal fees and costs per each court order received requiring the Department to remove funds to make such payments, unless otherwise directed by the Administrator of the Office of Legal Affairs or designee and consistent with PD 04.02.107.

7. A total of 50% of funds received in excess of $50 per month shall be removed for payment of child support obligations ordered to be collected by the court, consistent with PD 04.02.107; this is the maximum to be collected each month for payment of child support obligations even if multiple child support orders are received.

8. Whenever a prisoner is assessed a fee for medical services pursuant to PD 03.04.101 "Prisoner Health Care Copayment" or incurs another institutional debt, including a debt to the PBF, 100% of the prisoner's positive account balance shall be collected initially even if this would leave the prisoner with less than $10 available during the month for other personal use. Collection on the remaining debt shall be limited

>      to 50% of future funds received for credit to the account unless the
>      prisoner agrees in writing to a larger amount.

Plaintiff contends that the money he received should not have been considered "new funds" under ¶ W, because the money was merely a reimbursement to replace Plaintiff's staff-damaged glasses. Alternatively, he argues that the funds should have fallen within ¶ W(4), as "funds . . . for payment of medical . . . expenses." *Id.* Plaintiff contends that the taking of the funds violated his rights under the prison policy and his Fourteenth Amendment right to due process.

For relief, he seeks compensatory damages.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

Moreover, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*,

a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. In fact, it is clear that Plaintiff actually exercised his grievance remedies and that he received due process of law.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. According to his own allegations, Plaintiff received review of the taking at all three levels of the grievance process. He was interviewed on his grievance at Step I, and the grievance responders at all three levels addressed his arguments on the merits and rendered written decisions. The fact that he does not agree with the decision or that the result appears to him to be unfair does not demonstrate a due process violation. The Due Process Clause

does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff therefore fails to state a due process claim.[1]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

---

[1] The Court is troubled by the outcome of Defendants' grievance review process, which results in Plaintiff not having the money to pay for new glasses, despite the fact that his original glasses were damaged by a prison official. While Plaintiff's allegations fail to state a due process claim, the Court anticipates that, should Plaintiff seek medical care and demonstrate that he requires corrective lenses, MDOC officials will observe their responsibilities under the Eighth Amendment to meet Plaintiff's serious medical needs by providing glasses.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  July 27, 2016           /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge